UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| Mike Brennan, <br><br> Plaintiff, <br><br> v. <br><br> ISK Magnetics, Inc., <br><br> Defendant. | Case No. 2:09-CV-140 JVB |

**ORDER AND OPINION**

Plaintiff Mike Brennan sued Defendant ISK Magnetics Inc. for injuries he received while cleaning a conveyor at Cathay Pigments Inc.'s Porter County, Indiana, facility.  Defendant originally owned the facility but sold it to Cathay in 2006, sixteen months before Plaintiff's injury.  Plaintiff had worked on the conveyor both while Defendant and Cathay owned the facility.

Plaintiff sued Defendant under product liability and tort theories.  Defendant filed a motion for summary judgment, which the Court grants.

**A.  Standard of Review**

A motion for summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Rule 56 further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on

which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A party seeking summary judgment bears the initial responsibility of informing a court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party supports its motion for summary judgment with affidavits or other materials, it thereby shifts to the non-moving party the burden of showing that an issue of material fact exists. *Keri v. Bd. of Trust. of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2006).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *Keri*, 458 F.3d at 628. A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249–50 (1986).

**B.  Statement of Facts**

Plaintiff Mike Brennan was injured while cleaning the "Line 2 Dryer" screw conveyor system at Cathay Pigments' ("Cathay") Porter County, Indiana, facility. Defendant ISK Magnetics Inc. installed this system when it owned the facility. The Line 2 Dryer is a large fixtured system that Cathay uses to manufacture iron oxide. It consists

of a number of screw conveyors, which are collectively known as the toner discharge system.  Plaintiff was injured on the incline screw.

**(1)** *The Line 2 Dryer*

The Conveyor is a twelve-foot-long trough with a motor-driven revolving longitudinal shaft on which a spiral plate is attached. (Report of Fredrick Kucklick at 2.) The Conveyor has a removable pair of guards on top of the shaft that, when removed, completely expose the shaft and its spiral plate. (*Id.*)  Defendant used Line 2 to manufacture iron oxides. (Trapp Dep. DE 65-3 at 22, 23; Aderhold Dep. DE 65-4 at 24.)

Defendant owned the facility and was engaged in the business of manufacturing and selling oxides and pigments. (Asset Purchase Agreement DE 65-9.)  Defendant added the incline screw conveyor at issue in the early 2000s to accommodate the change from the manufacture of iron oxides to pigments.  (Trapp Dep. DE 65-3 at 22, 23, 55; Aderhold Dep. DE 65-4 at 27–30.)

On June 30, 2006, Defendant sold to Cathay all the land and improvements related to the plant.  After July 31, 2006, Cathay owned the facility.  (ISKM's Answers to Plaintiff's Second Set of Interrogatories DE 65-6, 2, 3; Asset Purchase Agreement DE 65-9.)

**(2)** *Safety and Cleaning Procedures for the Screw Conveyor*

At all relevant times, Cathay had a written policy for cleaning screw conveyors. (Comsa Dep. DE 65-2 at 11–12.)  In general, employees should lock and tag the conveyor before cleaning it; the conveyor should not be running while an employee

3

cleans it.  (Aderhold Dep. DE 65-4 at 17–18, 41; Trapp Dep. DE 65-3 at 20; Comsa Dep. DE 65-2 at 17.)

The lockout/tagout ("LOTO") procedure prevents the equipment from starting unexpectedly.  An employee must lock and tag the machine so that it cannot be turned on while it is being cleaned.  (Trapp Dep. DE 65-3 at 11.)  Generally, the LOTO procedures apply to any machinery that rotates, moves, or makes a pinch point.  (*Id.* at 19.)  Rick Trapp, safety manager at the plant, trained Plaintiff on LOTO procedures before the incident. (Brennan Dep. DE 65-5 at 52–54.)

An employee should always maintain a safe distance from the machinery while it is operating.  (Trapp Dep. DE 65-3 at 19.)  It is not proper to stand on the motor or any part of the equipment while cleaning it.  (Comsa Dep. DE 65-2 at 45; Aderhold Dep. DE 65-4 at 53.)  An employee should never attempt to climb over the conveyor while it is running.  (Trapp Dep. DE 65-3 at 34.)

**(3)** *Plaintiff's Injury*

Plaintiff began working for Defendant in September 2004 and continued to work at the facility after Cathay bought it.  (Plaintiff's Supp. Ans. to ISKM's Interrogatories DE 65-8 at 36.)  He worked with the screw conveyor for the entire duration of his employment.  (*Id.* at 28.)  He had been working on the Line 2 dryer for about six months when he was injured.  (*Id.*)

On January 25, 2008, Plaintiff left the dryer belt in the forward position while cleaning the Line 2 feeder.  This caused the material that was washed out of the feeder to end up in the dryer discharge screw.  (Brennan Dep. DE 65-5 at 105, 116.)  Running the

4

dryer belt in the forward position was improper. The dryer belt should have been running in reverse so that the material would fall off the end of the belt and not end up in the discharge system. (Aderhold Dep. DE 65-4 at 34–35; Comsa Dep. DE 65-2 at 25–27; Brennan Dep. DE 65-5 at 107.)

Plaintiff had to use a hose to remove the wet material because of this mistake. (Comsa Dep. DE 65-2 at 5–9, 25–27.) Typically, an employee did not need to use a hose because the conveyor used dry product and the employee could scrape the conveyor. An employee would only need to use a hose to avoid contamination when the plant was making a significant color change, such as from yellow to black. (Aderhold Dep. DE 65-4 at 6, 12–13.)

Plaintiff admits he forgot to run the belt in reverse. (Brennan Dep. DE 65-5 at 107–08, 110, 116.) The night shift employees decided that they would leave Plaintiff's mess for him to clean up on his shift the following day. (*Id.* at 110–11, 115.)

On January 26, 2008, Platintiff reported for his shift at 6:00 a.m. and began to clean the conveyor. (*Id.* at 120; Plaintiff's Supp. Ans. to ISKM's Interrogatories DE 65-8 at 26.) Someone removed the screw's protective covers, though the parties dispute who removed them. Plaintiff was washing the conveyor out with a water hose while the machine was still running. (Brennan Dep. DE 65-5 at 114–15.) Plaintiff admitted that he did not use the LOTO procedures because he believed the machine needed to be running to clean it. (*Id.* at 111.) He also used a hose since the material was wet. (*Id.* at 113.)

After he washed the conveyor, Plaintiff stood on the motor to see if he had adequately cleaned it. While on top of the motor, peering over the moving conveyor, he

5

felt himself start to slip. Rather than falling head-first into the machine, Plaintiff leapt over the machine onto the ground.

Although he cleared the conveyor, he lost his footing when he landed because the ground was slippery from the wet sludge and iron oxide. (*Id.* at 99–100; Plaintiff's Supp. Ans. to ISKM's Interrogatories DE 65-8 at 30, 33.) He reached out to steady himself on the conveyor, but his sleeve or hand became caught in the conveyor and his arm was severed. (Brennan Dep. DE 65-5 at 100–03.)

Plaintiff admits that he did not follow company procedures when he cleaned the conveyor and admits he knew of the dangers of his cleaning method. (*Id.* at 87–92, 111.) For instance, Plaintiff acknowledges the motor on which he stood might be slippery because of the outside temperature and overspray from the hose. (*Id.* at 122, 144.) He also knew that water and iron oxide created a slippery surface on the floor regardless of the outside temperature. (*Id.* at 141–43.)

**(4)** *Cathay's Investigation*

Following the incident, Cathay investigated the events leading up to Plaintiff's injury. Cathay concluded that Plaintiff violated the proper cleaning procedure by failing to lock out and tag out the rotating machinery. (Trapp Dep. DE 65-3 at 7, 40–41; Aderhold Dep. DE 65-4 at 44; Comsa Dep. DE 65-2 at 31, 45.) He also violated safety procedures by standing on the motor. (Trapp Dep. DE 65-3 at 48.) Cathay also determined that a slippery work surface may have contributed to the incident. (*Id.* at 42.)

Additionally, Steve Aderhold testified that Plaintiff did not need to use the hose to clean the conveyor because the color change was not significant—the plant was

6

switching from dark brown to black.  (Aderhold Dep. DE 65-4 at 59.)  Plaintiff would not have needed to use the hose if he had not allowed the screw conveyor to get wet by running the belt forward on the previous day. (*Id.* at 59–61.)

### C. Argument

**(1)** *Product Liability Claim*

Plaintiff initially brought a product liability claim against Defendant but in his response brief he "concedes that summary judgment is appropriate on [Plaintiff's] claims under the Indiana Product Liability Act."  (DE 69 at 4.)  Therefore, the Court grants summary judgment in Defendant's favor on this issue.

**(2)** *Workers' Compensation Defense*

Defendant asserts that Plaintiff's tort claim is barred by the exclusivity provision of Indiana's Workers' Compensation Act, Indiana Code § 22-3-2-6, even though Plaintiff was working for Cathay, and not Defendant, at the time of the accident.  Plaintiff counters by arguing that the exclusivity provision does not apply since Plaintiff had stopped working for Defendant sixteen months before he was injured.

Defendant relies on *Price v. R & A Sales*, 773 N.E.2d 873 (Ind. Ct. App. 2002). In *Price*, the plaintiff slipped and fell down some steps as he was leaving the premises after his supervisor terminated him.  *Id.* at 874.  Although the defendant no longer employed the plaintiff at the time of the accident, the Indiana Court of Appeals held that the exclusivity provision applied and barred the plaintiff's tort claim.  *Id.* at 877.

According to the court, the employer should be responsible for a terminated employee's safety for a reasonable period of time after the termination. *Id.*

*Price* does not govern this case, however. While an employer is responsible for an employee's safety for a reasonable period of time, sixteen months is not a reasonable period of time. The plaintiff in *Price* was injured on his way out of the office immediately after being terminated. Plaintiff, on the other hand, was injured sixteen months after Defendant sold the premises to Cathay. As such, Plaintiff's injury did not arise in the course of his employment with Defendant and his claim is not barred by the exclusivity provision of Workers' Compensation Act. Therefore, the Court turns to the merits of Plaintiff's tort claim.

**(3)** *Defendant's Duty under Restatement (Second) Torts § 388*

Plaintiff alleges that Defendant is liable for his injuries because it supplied the conveyor. Suppliers of chattels can be liable under Restatement § 388

> for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier
> a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and
> b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and
> c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

Restatement (2d) Torts § 388.

However, there is no basis for such liability here. Plaintiff admitted he knew that it was dangerous to use the equipment the way he did on the day of his accident. For instance, he knew using a hose to wash off the conveyor would make the ground slippery regardless of the outside temperature. (Brennan Dep. DE 65-5 at 141–43.) He also knew

8

standing on the motor was dangerous. (*Id.* at 209.) Defendant installed a safety guard on the equipment, but someone removed the equipment before Plaintiff was injured. Yet Plaintiff still used the equipment even though he knew doing so without the safety guard was dangerous. (*Id.*) For this reason, Plaintiff fails the second element of the Restatement's test. Defendant owed no duty to warn Plaintiff of the dangers since the dangers were readily apparent. *See Dutchmen Mfg., Inc. v. Reynolds*, 849 N.E.2d 516, 522 (Ind. 2006) ("A supplier of a chattel has no duty to warn of an obvious hazardous condition which a "'mere casual looking over will disclose.'" (quoting Restatement (Second) Torts § 388 cmt. k). Because there is no genuine dispute as to Plaintiff's knowledge about the hazards posed by Line 2 when he was cleaning it, summary judgment in Defendant's favor is appropriate on Plaintiff's tort claim against Defendant.

**(4)** *Comparative Fault*

Defendant argues that, even if it is at fault, Plaintiff was more than 50% at fault for the injuries because he ran the conveyor forward when it should have been run in reverse, used a hose to clean off the conveyor, cleaned the conveyor while it was moving, and climbed on the motor to look into the running machine. Plaintiff counters that the Court cannot establish his comparative fault as a matter of law. The Court does not need to address this issue because Plaintiff cannot establish Defendant's fault under Restatement (Second) § 388.

**D. Conclusion**

The Court grants Defendant's motion for summary judgment (DE 63).

SO ORDERED on April 25, 2012.

    S/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN
UNITED STATES DISTRICT JUDGE